IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2021 Term

_____

No. 20-0997

_____

FILED
November 18, 2021
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

IN RE: A.F.

_____

Appeal from the Circuit Court of Nicholas County
The Honorable Stephen O. Callaghan, Judge
Civil Action No. 20-JA-46

AFFIRMED

_____

Submitted: October 5, 2021
Filed: November 18, 2021

M. Tyler Mason, Esq.
Leslie Legal, PLLC
Dellslow, West Virginia
Counsel for Petitioner

Denise N. Pettijohn, Esq.
The Pettijohn Law Group, L.C.
Lewisburg, West Virginia
Guardian ad Litem for the
Infant child, A.F.

Patrick Morrisey, Esq.
Attorney General
Brittany N. Ryers-Hindbaugh, Esq.
Assistant Attorney General
Brandolyn N. Felton-Ernest, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for Respondent
Department of Health
and Human Resources

JUSTICE ARMSTEAD delivered the Opinion of the Court.

JUSTICE WOOTON concurs in part and dissents in part and reserves the right to file a separate Opinion.

SYLLABUS BY THE COURT

1.	"'Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.' Syl. Pt. 1, *In the Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996)." Syl. Pt. 1, *In re Cecil T.,* 228 W. Va. 89, 717 S.E.2d 873 (2011).

2.	"Termination . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 7, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996).

3.	"Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the

health and welfare of the children." Syl. Pt. 3, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996).

4.    "When no factors and circumstances other than incarceration are raised at a disposition hearing in a child abuse and neglect proceeding with regard to a parent's ability to remedy the condition of abuse and neglect in the near future, the circuit court shall evaluate whether the best interests of a child are served by terminating the rights of the biological parent in light of the evidence before it. This would necessarily include but not be limited to consideration of the nature of the offense for which the parent is incarcerated, the terms of the confinement, and the length of the incarceration in light of the abused or neglected child's best interests and paramount need for permanency, security, stability and continuity." Syl. Pt. 3, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

5.    "This Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syl. Pt. 3, *Barnett v. Wolfolk*, 149 W. Va. 246, 140 S.E.2d 466 (1965).

6.    "[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development [delayed] by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980).

ARMSTEAD, Justice:

Petitioner Father, J.F. ("Petitioner"), appeals the circuit court's November 20, 2020, disposition order terminating his parental rights to the infant child, A.F.[1] Petitioner was incarcerated and awaiting trial on two felonies and numerous other charges when the abuse and neglect petition was filed. The circuit court adjudicated Petitioner of being abusive and neglectful because his incarceration rendered him unable to care for the child and unable to protect the child from the substance of abuse of the child's mother, M.M. The main factor cited by the circuit court in its disposition order terminating Petitioner's parental rights was his incarceration. On appeal, Petitioner contends that the circuit court erred in terminating his parental rights in lieu of granting him an improvement period.

In *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011), this Court addressed the factors that must be considered when incarceration is the basis for termination of parental rights. While we find that the circuit court failed to conduct an appropriate *Cecil T.* analysis, the appendix record is sufficient for this Court to conduct our own *Cecil T.* review. Upon our review, we conclude that Petitioner's parental rights should be terminated. Therefore, we affirm the circuit court's disposition order.

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials to identify the parties. *See, e.g., State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Department of Health and Human Resources ("DHHR") filed an abuse and neglect petition against Petitioner and M.M. in June of 2020. The DHHR alleged that M.M. had overdosed while the child was in her care, and that she had tested positive for methamphetamine, amphetamine, and fentanyl. The DHHR alleged that Petitioner Father was unable to protect the child from M.M.'s drug use because he had been incarcerated since November of 2019 and was awaiting trial on multiple charges. Petitioner's charges included two felonies: 1) felon in possession of a firearm; and 2) "escape or attempt to escape from custody" which involved him allegedly tampering with his home confinement bracelet.[2] Petitioner was unable to post bail and remained incarcerated throughout the proceedings. He appeared at the circuit court hearings by video or teleconferencing.

During the adjudicatory hearing, M.M. stipulated that her substance abuse negatively affected her ability to parent the child. She was adjudicated as an abusing parent and was granted an improvement period. The circuit court found that Petitioner: 1) "was incarcerated at the time of [the] filing of this petition and was unable to care for the child;"

_____

[2] According to the DHHR, Petitioner's pending charges were: 1) escape or attempt to escape from custody, a felony; 2) prohibited person in possession of a firearm, a felony; 3) unauthorized acts with regard to wildlife without license or permit; 4) spotlighting; 5) hunting wildlife from a motorized vehicle; 6) hunting without written permission; 7) loaded rifle in motor vehicle; 8) "hunt closed season;" 9) "uncased firearm thirty minutes after sunset;" 10) shooting or discharging a firearm within five hundred feet of a dwelling; 11) "conspiracy to violate West Virginia Code Chapter 20, withholding information, obstructing officers;" and 12) waste of game animals.

2) "is incarcerated; therefore, he does not have a safe and suitable home;" and 3) "is incarcerated and is unable to protect the child from [M.M.'s] drug use." Based on these findings, the circuit court adjudicated Petitioner as an abusive and neglectful parent and issued a no contact order between Petitioner and M.M.

Prior to the final disposition hearing, the child was in a severe car wreck and had to be hospitalized. Upon learning about the car accident, Petitioner called M.M. and asked about the child's condition.

Petitioner's disposition hearing occurred on November 13, 2020.[3] Petitioner and a DHHR employee testified at this hearing. Petitioner pled the Fifth Amendment in response to questions about the criminal charges he was facing. The State responded that "the Court can make a negative inference from your failure to answer these questions[.]" Further, Petitioner testified that prior to his current incarceration, he was unaware that M. M. had any substance abuse problems and stated that, to his knowledge, her drug abuse started after he was incarcerated. When asked if he would be capable of participating in an improvement period by telephone, including parenting classes and visitation with the child, Petitioner stated, "I'm sure I could arrange that."

---

[3] At that time, Petitioner had been moved to the Carter County Detention Center in Kentucky. Petitioner's brief to this Court notes that he had been moved to this facility by "the Federal Authorities after he was indicted on Federal charges for prohibited person in possession of a firearm and ammunition."

The State asked Petitioner about his prior criminal convictions. Petitioner testified that he had prior convictions for manslaughter and arson, had been incarcerated for those convictions, and was released in 2016. Regarding the phone call to M.M. after the car accident, Petitioner stated that he learned that his child was involved in a car accident but was unable to obtain the details from his friends and family. Therefore, he called M.M. even though he knew that it was in violation of the circuit court's no contact order.[4]

DHHR employee Rodney Blankenship testified that the DHHR was recommending that the circuit court terminate Petitioner's parental rights. He testified that the DHHR was against granting Petitioner an improvement period due to Petitioner's incarceration and the uncertainty surrounding the duration of his incarceration. On cross-examination, Mr. Blankenship testified that he did not know if parenting classes could be provided over the phone or by video conference. He stated, "I don't know what Carter County, Kentucky [Detention Center] does."

Following this testimony, counsel for each of the parties addressed the court. Petitioner's counsel noted that Petitioner was adjudicated on his failure to protect the child from M.M.'s substance abuse. At the time this disposition hearing was held, M.M. was

---

[4] Petitioner was also asked about the status of his rights to his other children. He testified that he has a 16-year-old daughter with S.D., with whom he shares joint custody. He stated that he had an additional child with A.J., and that this child had been adopted by A.J.'s brother after Petitioner was incarcerated on the prior charges.

complying with the terms of her improvement period. Petitioner's counsel asserted that if M.M. continued to successfully address her substance abuse issues, the basis for Petitioner's adjudication—failure to protect the child from M.M.'s substance abuse—would cease to exist. However, Petitioner's counsel conceded that if M.M. "failed to comply with her improvement period, if her rights were terminated, then frankly [Petitioner's] rights could be terminated right along with it." Finally, Petitioner's counsel argued that incarceration alone, particularly pre-trial incarceration, was an insufficient basis upon which to terminate Petitioner's parental rights.

The circuit court terminated Petitioner Father's parental rights and denied Petitioner's request for a post-adjudication improvement period based mainly on Petitioner's incarceration. The circuit court found: 1) Petitioner was unable to participate in an improvement period due to his incarceration; 2) Petitioner had not seen the child since he was incarcerated in 2019; 3) it would not be in the child's best interest to delay permanency by awaiting the uncertain results of Petitioner's pending charges; 4) Petitioner failed to protect the child from M.M.'s drug use; 5) Petitioner had not yet been tried, and it was unknown if a trial date had been set; and 6) given the speculative nature of Petitioner's trial date and the duration of his incarceration, it was unlikely that he could correct the conditions of abuse and neglect in the near future.[5] The circuit court also found

---

[5] Additional factors cited by the circuit court include the following: the court drew a negative inference from Petitioner's refusal to answer several questions about his

(continued . . .)

that Petitioner had been incarcerated for much of the child's life and "the child needs continuity of care and caretakers, and a significant amount of time is required to be integrated into a stable and permanent home environment."

Based on the foregoing, the circuit court concluded that there was no reasonable likelihood that Petitioner could correct the conditions of abuse and neglect and that termination of Petitioner's parental rights was necessary for the child's welfare. Following entry of the disposition order terminating his parental rights, Petitioner filed the instant appeal.

## II. STANDARD OF REVIEW

We apply the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In the*

---

criminal charges; Petitioner was previously convicted of voluntary manslaughter, served prison time, and was released in 2016; Petitioner has other children that he does not have custody of; Petitioner assisted M.M. in violating the terms of her improvement period (the no contact order); and Petitioner violated the no contact order by calling M.M.

6

*Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873. With this standard in mind, we consider the parties' arguments.

## III. ANALYSIS

Petitioner argues that the circuit court committed "plain error when it failed to grant [his] motion for a post-adjudicatory improvement period and terminated his parental rights. . . . In practice, the success of his improvement period would inherently be tethered to the success of [M.M.'s] improvement period." In his brief to this Court, Petitioner argued that as long as M.M. was successfully completing her improvement period in an effort to have her parental rights restored, the child's permanency would not be delayed by keeping Petitioner's parental rights intact. Further, Petitioner asserted that the circuit court's *Cecil T.* analysis was erroneous because it failed to give substantial weight "to the fact that Petitioner has not yet been convicted of anything."

The factual circumstances have significantly changed since the circuit court entered its disposition order and since the parties filed their briefs. When the disposition order was entered and when the parties filed their briefs, 1) Petitioner had not been convicted of any of his current charges, 2) his incarceration term was uncertain, and 3) M.M. was successfully participating in her improvement period and hoped to be reunified

7

with the child. In the parties' Rule 11(j)[6] updates to this Court, it was revealed that 1) Petitioner pled guilty to the federal felony charge of "felon in possession of firearm" and that he was sentenced to an incarceration term of 78 months; 2) Petitioner was re-indicted on the felony escape charge involving tampering with his home confinement bracelet;[7] and 3) M.M.'s parental rights were involuntarily terminated by the circuit court on September 16, 2021.[8] With this background in mind, we proceed to examine our law regarding the impact of incarceration when considering whether to terminate a person's parental rights, the circuit court's *Cecil T.* analysis, and our analysis in light of the new factual developments that have occurred.

Pursuant to West Virginia Code § 49-4-604(c)(6) (2020), a circuit court is directed to terminate parental rights upon a finding that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future and when necessary for the child's welfare. "No reasonable likelihood that conditions of neglect or abuse can be substantially corrected" is statutorily defined as "based upon the

---

[6] Pursuant to Rule 11(j) of the West Virginia Rules of Appellate Procedure, "[t]he parties shall provide a written statement of any change in the circumstances that were set forth in the briefs within one week of any oral argument scheduled by the Court or within such other time as may be specified by order."

[7] The escape charge had been dismissed without prejudice in February of 2021 by an order "Granting State's Motion to Nolle Prosequi."

[8] The child has been placed with her grandparents since the inception of this matter. The permanency plan is adoption by the grandparents.

evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." W. Va. Code § 49-4-604(d). We have held that "[t]ermination . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 7, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996). We have also held that "[a]lthough parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." Syl. Pt. 3, *In re Katie S.*

This Court has explained that termination of parental rights may be based on incarceration after a court considers a number of factors. In *Cecil T.*, the Court held:

> When no factors and circumstances other than incarceration are raised at a disposition hearing in a child abuse and neglect proceeding with regard to a parent's ability to remedy the condition of abuse and neglect in the near future, the circuit court shall evaluate whether the best interests of a child are served by terminating the rights of the biological parent in light of the evidence before it. This would necessarily include but not be limited to consideration of the nature of the offense for which the parent is incarcerated, the terms of the confinement, and the length of the incarceration in light of the abused or neglected child's best interests and paramount need for permanency, security, stability and continuity.

Syl. Pt. 3, 228 W. Va. 89, 717 S.E.2d 873.

Justice Workman addressed the Court's holding in *Cecil T.* in a recent case and emphasized that the nature of the offense is an important factor that a court must consider when conducting a *Cecil T.* analysis:

9

Unquestionably, a parent whose term of incarceration is so lengthy that his children will be almost grown before the father is released from prison is a critical consideration under the statutory definition of neglect and is a permissible consideration under *In re Cecil T.* Another consideration under *In re Cecil T.* is the nature of the offense. Here the petitioner committed murder, not a garden-variety, nonviolent crime, obviously without considering the impact of his criminal conduct on his children. His actions alone resulted in his lengthy term of incarceration, which will preclude him from meeting even his minimal parenting responsibilities.

In short, the *Cecil T.* factors, along with the statutory definitions for "abandonment" and "neglect" in West Virginia Code § 49-1-201, are all unquestioningly relevant to determining whether the Department has established that the parent is abusing or neglecting[.]

*In Re A.P.-1*, 241 W. Va. 688, 697, 827 S.E.2d 830, 839 (2019) (Workman, J., concurring, in part, and dissenting, in part).

In the instant case, the circuit court was in an unusual procedural position when it entered its disposition order—evaluating the *Cecil T.* factors based on Petitioner's pre-trial incarceration. With this unusual procedural position in mind, we note that the circuit court's *Cecil T.* analysis did not include any discussion of the potential length of incarceration Petitioner was facing. Further, there was no discussion of the substance of the underlying criminal charges Petitioner faced. Instead, the circuit court's order focused largely on the uncertain duration of Petitioner's incarceration.

Additionally, the circuit court's order does not include any substantive discussion of the nature, length, and terms of Petitioner's incarceration "in light of the abused or neglected child's best interests and paramount need for permanency, security,

10

stability and continuity." Syl. Pt. 3, *Id.* When the circuit court entered its disposition order, Petitioner had not been convicted or sentenced, and M.M. was successfully complying with the terms of her improvement period. Therefore, the circuit court should have addressed how terminating Petitioner's parental rights in November of 2020 served the child's need for permanency, security, stability, and continuity.

Based on the foregoing, we find that the circuit court's *Cecil T.* analysis was erroneous. However, that is not the end of our inquiry. "This Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syl. Pt. 3, *Barnett v. Wolfolk*, 149 W. Va. 246, 140 S.E.2d 466 (1965). As discussed below, the parties' Rule 11(j) updates provide this Court with a sufficient basis to conduct our own *Cecil T.* review. Upon such review, we conclude that Petitioner's parental rights should be terminated.

Petitioner has now been sentenced to an incarceration term of 78 months based on his guilty plea to the "felon in possession of firearm" charge. Pursuant to *Cecil T.*, we must consider the nature of this offense and the length of incarceration. Because Petitioner has now been convicted of being a "felon" in possession of a firearm, we find that the underlying felonies are relevant to our consideration of the nature of his current offense. During the disposition hearing, Petitioner testified that his underlying felonies were for "arson and a manslaughter." The manslaughter charge that Petitioner pled guilty to is a crime that involved an act of violence. After serving his sentence for these crimes,

11

Petitioner, as a convicted felon, was not permitted to possess a firearm. Despite this prohibition, Petitioner shot a deer with a firearm, was subsequently charged, and has now pled guilty to the federal offense of "felon in possession of a firearm." The length of Petitioner's confinement is 78 months.

It is clear that Petitioner knew he was not permitted to possess a firearm and that he nevertheless engaged in conduct that resulted in his current conviction. This conviction demonstrates that Petitioner failed to consider the impact his criminal conduct would have on his ability to act as a responsible parent for his child. His actions resulted in a lengthy term of incarceration, which will preclude him from fulfilling his parenting responsibilities for the next 78 months.[9]

---

[9] Additionally, Petitioner has been re-indicted on the felony escape charge involving tampering with his home confinement bracelet. If convicted, Petitioner faces a five-year incarceration term. West Virginia Code § 61-5-10 (2000), provides, in relevant part:

> Whoever escapes or attempts to escape by any means from the custody of a county sheriff, the director of the regional jail authority, an authorized representative of said persons, a law-enforcement officer, probation officer, employee of the division of corrections, court bailiff, or from any institution, facility, or any alternative sentence confinement, by which he or she is lawfully confined, if the custody or confinement is by virtue of a charge or conviction for a felony, is guilty of a felony and, upon conviction thereof, shall be confined in a correctional facility for not more than five years[.]

If found guilty of this charge, this is another instance of Petitioner's failure to consider the impact his criminal activity would have on his ability to parent his child.

Next, we find that terminating Petitioner's parental rights based on his current incarceration is in the child's best interest and is necessary for the child to achieve permanency, security, stability, and continuity. As set forth in the Rule 11(j) updates, M.M.'s parental rights have now been terminated. During the disposition hearing, Petitioner's counsel conceded that if M.M. "failed to comply with her improvement period, if her rights were terminated, then frankly [Petitioner's] rights could be terminated right along with it." Because M.M.'s parental rights have now been terminated, the plan for permanency is adoption by the child's grandparents. It is clear that the paramount need for the child to achieve permanency will be accomplished by terminating Petitioner's parental rights. The child is two years old. This Court has recognized that achieving permanency is especially important for young children, such as the child at issue herein:

> [C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and *this is particularly applicable to children under the age of three years* who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development [delayed] by numerous placements.

Syl. Pt. 1, in part, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980) (emphasis added).

> Similarly, this Court has observed that

> the early, most formative years of a child's life are crucial to his or her development. There would be no adequate remedy at law for these children were they permitted to continue in this abyss of uncertainty. We have repeatedly emphasized that children have a right to resolution of their life situations, to a basic level of nurturance, protection, and security, and to a permanent placement.

13

*State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 257, 470 S.E.2d 205, 211 (1996).

In sum, our *Cecil T.* analysis reveals that the termination of Petitioner's parental rights is in the best interest of the child and will allow this child the opportunity to achieve permanency through the planned adoption by her grandparents.

Finally, in light of our *Cecil T.* analysis, we find no support for Petitioner's argument that the circuit court erred by failing to grant him an improvement period. This Court has held that "a parent charged with abuse and/or neglect is not unconditionally entitled to an improvement period." *In re Emily*, 208 W. Va. 325, 336, 540 S.E.2d 542, 553 (2000). West Virginia Code § 49-4-610(3)(B) provides that the circuit court may grant a parent an improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." Further, we have stated that a circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). We have also discussed the ability of incarcerated parents to correct the conditions of abuse and neglect:

> In some cases, a parent who is incarcerated may under the circumstances still be able to correct conditions of abuse and neglect "in the near future" through participation in an improvement period or otherwise. In other cases, incarceration may unreasonably delay the permanent placement of the child deemed abused or neglected, and the best interests of the child would be served by terminating the incarcerated person's parental rights.

*Cecil T.*, 228 W. Va. at 97, 717 S.E.2d at 881.

Because Petitioner's incarceration term will last for at least 78 months, it is clear that granting him an improvement period would be a futile act. Petitioner will not be able to correct the conditions of abuse and neglect in the near future through participation in an improvement period. Further, granting an improvement period would delay permanency for the child and would clearly not be in the child's best interest.

## IV. CONCLUSION

We affirm the circuit court's November 20, 2020, order.

Affirmed.